UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN LEE,

               Petitioner,

   v.

JEFFREY UTTECHT,

               Respondent.

Case No. C15-1665-RAJ-JPD

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

This is a federal habeas action brought under 28 U.S.C. § 2254. Petitioner Steven Lee challenges in his petition a 2008 judgment and sentence of the Snohomish County Superior Court. Respondent has filed an answer to petitioner's petition together with relevant portions of the state court record. This Court, having reviewed petitioner's petition, respondent's answer, and the balance of the record, concludes that the petition should be denied and this action should be dismissed with prejudice.

## FACTUAL/PROCEDURAL HISTORY

The Washington Court of Appeals, on direct appeal, summarized the facts of petitioner's crime as follows:

REPORT AND RECOMMENDATION
PAGE - 1

> In the early morning of August 21, 2007, Jill Rich and Bristol Chaney found Forrest Starrett lying next to his truck in Everett, Washington. Starrett had suffered gunshot wounds to the leg and head. He was dead when police arrived at the scene. Investigation led to [Steven] Lee and [Tsegazeab] Zerahaimanot.
>
> The State charged them in Snohomish County Superior Court with felony murder, premeditated murder, and another crime not relevant to this appeal. The charges also included firearm allegations to support requests for enhancements.
>
> The night of the shooting, Starrett was at Michelle Walker's apartment with several other individuals, including Leroy Holt. Holt invited Lee and Zerahaimanot to the apartment. Holt later witnessed Zerahaimanot shoot Starrett in the lower part of his body and Lee shoot Starrett in the head. It was the State's theory that Lee and Zerahaimanot killed Starrett because they were suspicious that he was a police officer. A jury convicted them as charged.

(Dkt. 21, Ex. 2 at 2.)

On December 16, 2008, petitioner was sentenced to a term of 407 months confinement for the felony murder conviction and 12 months confinement for an unlawful possession of a firearm conviction. (*Id*., Ex. 1 at 6.) Those two sentences were ordered to be served concurrently. (*See id*.) Petitioner's premeditated murder conviction was merged with his felony murder conviction for purposes of sentencing. (*See id*., Ex. 1 at 1.)

Petitioner appealed his judgment and sentence to the Washington Court of Appeals arguing, among other things, that his confrontation rights were violated by the admission of an out-of-court statement made by his non-testifying co-defendant, that the charging document violated his right to notice of the essential elements of felony murder because it did not contain the elements of the predicate felony, and that the trial court erred in refusing to vacate petitioner's merged murder conviction. (*See id*., Ex. 4 at 1 and Ex. 5 at 3-4.)

On February 7, 2011, the Court of Appeals issued an opinion, published in part, remanding the case to the trial court to vacate petitioner's premeditated first degree murder conviction, but otherwise affirming petitioner's convictions. (*See id*., Ex. 2.) Petitioner

subsequently sought review by the Washington Supreme Court, and the Supreme Court denied review without comment on June 5, 2013. (*See* Dkt. 21, Exs. 10 and 12.) On January 3, 2014, the Snohomish County Superior Court, on remand, vacated petitioner's conviction for premeditated first degree murder and entered an amended judgment and sentence. (*Id*., Ex. 3.)

On June 30, 2014, petitioner filed a personal restraint petition in the Washington Court of Appeals arguing, among other things, that the prosecution presented insufficient evidence that the killing occurred in the course of, in furtherance of, or in immediate flight from, the crime of kidnapping or attempted kidnapping. (*See id*., Ex. 13.) The Court of Appeals dismissed the petition on June 10, 2015. (*Id*., Ex. 15.) Petitioner moved for discretionary review in the Washington Supreme Court, and the Supreme Court Commissioner issued a ruling denying review on December 23, 2015. (*Id*., Exs. 16 and 17.) Petitioner now seeks federal habeas review of his judgment and sentence.

## GROUNDS FOR RELIEF

Petitioner identifies the following two grounds for relief in his federal habeas petition:

GROUND ONE:  admission of testimony from Holt was inadmissible hearsay that violated his confrontation rights.

. . . .

GROUND TWO:

. . . .

The second ameded [sic] information violated Mr. Lee's constitutional rights to notice of the essential elements of felony murder in first degree, because it did not contain the elements of the predicate felony of second degree kidnapping. While movement of a victim which might occur during the course of a homicide are not standing alone, indicia of a true kidnapping. Lee also contended the entire record evidence that either defendant threaten [sic] to use or used deadly force. State did not prove kidnapping. There is no proof of kidnapping in this case.

REPORT AND RECOMMENDATION
PAGE - 3

(Dkt. 8 at 5 and 7.)

## DISCUSSION

Respondent concedes that petitioner properly exhausted his claims in the state courts. Respondent argues, however, that the state courts' adjudication of petitioner's claims was neither contrary to, nor an unreasonable application of, United States Supreme Court precedent, and that petitioner's federal habeas petition should therefore be dismissed with prejudice. (*See* Dkt. 19.)

### Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).  The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S. at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Confrontation Clause

Petitioner asserts in his first ground for relief that his rights under the Confrontation Clause were violated by the admission at trial of testimony by prosecution witness Leroy Holt about a conversation he had with petitioner's co-defendant Tsegazeab Zerahaimanot after the murder in which Zerahaimanot inculpated petitioner in the shooting. (*See* Dkt. 8 at 5.) Specifically at issue is Holt's testimony that he told Zerahaimanot petitioner was the one who shot the victim in the head and that Zerahaimanot did not respond in any fashion to that

REPORT AND RECOMMENDATION
PAGE - 5

assertion.  (*See* Dkt. 8 at 5)  Petitioner claims that Zerahaimanot's silence in this circumstance was both a "statement" and was "testimonial," and that the admission of Holt's testimony regarding the silence violated petitioner's Sixth Amendment rights.  (*See id.*)

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  In *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), the Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  Nontestimonial hearsay statements, though subject to traditional limitations on hearsay evidence, are not subject to the Confrontation Clause because only testimonial statements "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause."  *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford*, 541 U.S. at 51)).

Although the Supreme Court, in *Crawford*, did not spell out a comprehensive definition of "testimonial," it did note that the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Crawford*, 541 U.S. at 68.  In subsequent cases, the Supreme Court announced a "primary purpose" test for use in determining whether a particular statement is testimonial or non-testimonial.  *See Ohio v. Clark*, 135 S.Ct. 2173, 2179-80 (2015).  The Court explained in *Clark* that "under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial."  *Id.* at 2180-81.

The Washington Court of Appeals rejected petitioner's Confrontation Clause claim on direct appeal:

REPORT AND RECOMMENDATION
PAGE - 6

Lee argues that Holt's testimony about a conversation he had with Zerahaimanot was inadmissible hearsay and violated Lee's Sixth Amendment right to confrontation. We . . . disagree.

. . . .

The Confrontation Clause prohibits the admission of testimonial hearsay unless the defendant has an opportunity to cross-examine the declarant. "A statement is testimonial if a reasonable person in the declarant's position would anticipate that his statement would be used against the accused in investigating or prosecuting a crime." "Non-testimonial" hearsay is not subject to the Confrontation Clause and is admissible, subject only to the rules of evidence. An alleged violation of the Confrontation Clause is reviewed de novo.

Here, Holt testified about a conversation he had with Zerahaimanot after the shooting:

> [PROSECUTOR]: One final thing I want to ask you about. You were asked some questions about [Zerahaimanot] being foggy about the details of what happened. You remember those questions?
>
> [HOLT]: Yes.
>
> . . . .
>
> [PROSECUTOR]: Did he tell you some of the things that he had done?
>
> [HOLT]: Um, he - - he said why - - he asked why did - - why did Forrest go for the gun. Grab the gun. And then he said - - he said something about him being the one that - - him might have been the one that shot him in the head.
>
> [PROSECUTOR]: So, whether or not Forrest struggled over the gun came from [Zerahaimanot] not you, correct? That question was raised by [Zerahaimanot]. Or the statement, I guess. It wasn't a question. Let me ask a clear question on that.
>
> [Zerahaimanot] was the one that asked you why did he struggle over the gun, why did he grab the gun.
>
> [HOLT]: Yes, he said that.
>
> [PROSECUTOR]: Okay.

REPORT AND RECOMMENDATION
PAGE - 7

> *And then [Zerahaimanot] made the statement to you that he believed he was the one that shot Forrest in the head.*
>
> [HOLT]:  Yes.
>
> [PROSECUTOR]:  And then it was after that that you said, No, I saw [Lee] shoot him in the head.
>
> [HOLT]:  Yes.
>
> [PROSECUTOR]:  Did he take any issue with that?
>
> [HOLT]:  No.
>
> [PROSECUTOR]:  Okay, All right.  Thank you.  That's all I have.

Zerahaimanot chose not to testify at trial.  So Lee did not have an opportunity to cross-examine him regarding this conversation.

We need not determine whether Zerahaimanot's silence was inadmissible hearsay under the rules of evidence.  Assuming without deciding that it was, his silence was not "testimonial."  Holt and Zerahaimanot were associates.  Holt invited Zerahaimanot to Walker's house the evening of the shooting.  On this record, a reasonable person in Zerahaimanot's position would not believe that his silence during a discussion with his associate, who witnessed the crime, would later be used in the investigation and prosecution of that crime.  Thus, the trial court did not violate Lee's right to confront Zerahaimanot.  Because there was no constitutional violation, we need not engage in a harmless error analysis.

Lee implies that the State's questioning of Holt on the stand makes Zerahaimanot's statement testimonial and therefore subject to the Confrontation Clause.  He cites no authority for this proposition and we assume he has found none.  We need not address this part of his claim any further.

Lee also argues that <u>Bruton v. United States</u> is controlling because Zerahaimanot's failure to correct Holt's statement was tantamount to a co-defendants confession that improperly implicated him.  But, the fact that Zerahaimanot's statements to Holt were not testimonial precludes an analysis under <u>Bruton</u>.  In <u>Bruton</u>, the co-defendant's confession was made to a postal inspector during interrogations at the city jail.  The statement was testimonial because a reasonable person in a jail interrogation would expect that his statements would be used in later investigating and prosecuting the crime.

REPORT AND RECOMMENDATION
PAGE - 8

>Because Zerahaimanot's statements were not testimonial, Lee's confrontation right was not violated and <u>Bruton</u> is not applicable.

(Dkt. 21, Ex. 2 at 33-37 (emphasis in original, footnotes omitted).)

Petitioner fails to demonstrate that the decision of the Court of Appeals is contrary to, or constitutes an unreasonable application of, United States Supreme Court precedent.  The Court of Appeals applied the correct standard in evaluating the challenged statement; *i.e.*, Zerahaimanot's silence, and reasonably concluded that the statement was not testimonial and, thus, that the admission of the statement at petitioner's trial did not violate his rights under the Confrontation Clause.  Petitioner's first ground for federal habeas relief should therefore be denied.

Inadequate Notice of Charges

Petitioner asserts in his second ground for relief that the second amended information setting forth the charges upon which he was convicted was constitutionally defective because it did not identify the elements of the predicate felony underlying his first degree felony murder charge.  (Dkt. 8 at 7.)

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the fundamental right to be clearly informed of the nature and cause of the charges against him. *See* U.S. Const. amend. VI; s*ee also Cole v. Arkansas*, 333 U.S. 196, 201 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.").  A charging document is sufficient to inform a defendant of the charges against him if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he

must defend, and (2) enables a defendant to plead an acquittal or conviction in bar of future prosecutions for the same offense.  *Hamling v. United States*, 418 U.S. 87, 117 (1974).

At issue here is the felony murder charge as set forth in the third amended information.[1] Petitioner was charged as follows:

> COUNT 1:  <u>FIRST DEGREE MURDER WITH A FIREARM</u>, committed as follows:  That the defendant, on or about the 21st day of August, 2007, committed or attempted to commit the crime of ***second degree kidnapping***, and in the course of or in furtherance of such crime or in immediate flight therefrom, the defendant, or another participant, did cause the death of another person . . . .

(*See* Dkt. 21, Ex. 6 at 33.)

Petitioner presented this claim to the Washington Court of Appeals on direct appeal by adopting the argument set forth in co-appellant Tzegazeab Zerahaimanot's opening brief.  (*See id.*, Ex. 5 at 3-4.)  Zerahaimanot argued therein that the relevant charging document (in Zerahaimanot's case it was the second amended information) was fatally defective because it simply identified the predicate crime underlying felony murder; *i.e.*, second degree kidnapping, without delineating its elements.  (*See* Cause No. C15-1719-RSL, Dkt. 29, Ex. 4 at 55.)  Zerahaimanot asserted that the failure to allege the essential elements of the predicate felony rendered the information unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000).  (*See id.*)  Zerahaimanot acknowledged in his argument the appellate court's prior decision in *State v. Hartz*, 65 Wn. App. 351, 354 (1992), a case in which the court held that the elements of the predicate crime need not be alleged in a felony murder charging document.  (*See id.*, Ex. 4 at 57.)  Zerahaimanot argued, however, that *Hartz* should be overruled because the holding there contradicted *Apprendi*.  (*Id.*)

---

[1] While petitioner identifies the relevant charging document as the second amended information, it appears from the record that the relevant charging document in petitioner's case was the third amended information.  (*See* Dkt. 21, Ex. 6 at 34 n. 6.)

REPORT AND RECOMMENDATION
PAGE - 10

The Court of Appeals rejected the appellants' challenge to the adequacy of the charging document. The court first noted that under *Hartz*, the elements of the underlying crime are not elements of the crime of felony murder and therefore need not be stated in the charging document. (Dkt. 21, Ex. 2 at 29.) Thus, the court concluded, the appellants' due process rights were not violated by the failure to include the elements of second degree kidnapping in the charging document. (*Id.*)

The Court of Appeals went on to reject the argument that the *Hartz* decision had been effectively overruled by *Apprendi* and two Washington cases, *State v. Goodman*, 150 Wn.2d 774 (2004), and *State v. Recuenco*, 163 Wn.2d 428 (2008), explaining:

> In Apprendi, the U.S. Supreme Court stated that "'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment . . . .'"  In Goodman, the Washington supreme court held that the type of controlled substance the defendant was convicted of possessing affected the duration of his sentence and therefore must be included in the information under Apprendi.  In Recuenco, the supreme court held that it was error to charge the lesser enhancement of "deadly weapon" in the information but sentence the defendant to a "firearm" enhancement, which has a greater penalty.  Here, the underlying crime of second degree kidnapping does not increase the penalty for felony murder.  Thus, these cases are not persuasive and do not overrule Hartz.

(Dkt. 21, Ex. 2 at 29-30.)

State courts are the ultimate expositors of their own law, and their construction of state law is binding on the federal courts. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, the Court of Appeals' conclusion that the charging document was sufficient, under state law, to provide the appellants with adequate notice of the charges against them is binding on this Court. This Court notes as well that petitioner identifies no United States Supreme Court authority that requires state charging documents to include the elements of predicate offenses that underlie a charged offense. Certainly, *Apprendi* set forth no such requirement nor did it imply any such

REPORT AND RECOMMENDATION
PAGE - 11

requirement. Finally, this Court notes that the Washington Court of Appeals reasonably concluded that *Apprendi* was not implicated in the circumstances of this case because the underlying crime of second degree kidnapping did not increase the penalty for felony murder. For the foregoing reasons, the portion of petitioner's second ground for relief challenging the adequacy of the charging document should be denied.

<u>Sufficiency of the Evidence</u>

Petitioner also asserts in his second ground for relief that there was insufficient evidence to establish the crime of kidnapping, the felony underlying his felony murder conviction. (*See* Dkt. 8 at 7.)

The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove beyond a reasonable doubt each element of the charged offense. *Carella v. California*, 491 U.S. 263, 265 (1989) (citing *In re Winship*, 397 U.S. 358, 364 (1970)). Due process claims challenging the sufficiency of the evidence are evaluated under the standard announced in *Jackson v. Virginia*, 443 U.S. 307 (1979). The Supreme Court explained in *Jackson* that the relevant question in evaluating a claim of insufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This standard is "'highly deferential' to the jury's findings." *United States v. Bancalari*, 110 F.3d 1425, 1428 (9th Cir. 1997). As the Supreme Court has made clear, it is the responsibility of the jury, and not a reviewing court, to decide what conclusions should be drawn from the evidence admitted at trial. *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011).

The Supreme Court has also made clear that sufficiency of the evidence claims are subject to a second layer of judicial deference on federal habeas review. Specifically, "a federal

court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012) (citing *Cavazos*, 132 S.Ct. at 4).

The state courts rejected petitioner's sufficiency of the evidence claim in his personal restraint proceedings. (*See* Dkt. 21, Exs. 15 and 17.) The Washington Supreme Court explained its conclusion as follows:

> In reviewing an insufficient evidence claim, the court asks whether viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Here, Leroy Holt invited Mr. Lee and Mr. Zerahaimanot to Michelle Walker's apartment, where Forrest Starlett was also present. The jury heard testimony that Mr. Zerahaimanot was yelling at Mr. Starlett while Mr. Lee stood next to him, holding a gun aimed at Mr. Starlett. Mr. Lee and Mr. Zerahaimanot then ordered Mr. Starlett to leave the apartment, and they escorted him out to the parking lot. In the parking lot, the three men struggled over the gun, and then both Mr. Lee and Mr. Zerahaimanot shot Mr. Starlett as he sat in the passenger seat of his vehicle. Viewed in the light most favorable to the prosecution, this evidence established that Mr. Lee and Mr. Zerahaimanot used force to abduct, or attempt to abduct, Mr. Starlett, and that Mr. Lee was a full participant and accomplice with Mr. Zerahaimanot. *See* RCW 9A.40.030(1) (a person is guilty of kidnapping in the second degree if he or she intentionally abducts another person under circumstances not amounting to kidnapping in the first degree); RCW 9A.40.010(1) ("abduct" means to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force); RCW 9A.40.010(6) ("restraint" means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with his or her liberty; restraint is "without consent" if it is accomplished by physical force, intimidation, or deception). The acting chief judge therefore properly dismissed Mr. Lee's personal restraint petition.

(Dkt. 21, Ex. 17 at 2-3.)

Petitioner fails to demonstrate that this conclusion of the Washington Supreme Court is contrary to, or constitutes an unreasonable application of, United States Supreme Court

REPORT AND RECOMMENDATION
PAGE - 13

precedent. The state court correctly identified the applicable standard and reasonably concluded that, based on the evidence presented at trial, a rational trier of fact could have found beyond a reasonable doubt that petitioner killed the victim while committing or attempting to commit kidnapping by restraining the victim through the threatened use of deadly force. (*See id*. and Ex. 15 at 3.) Thus, the portion of petitioner's second ground for relief challenging the sufficiency of the evidence should also be denied.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition for writ of habeas corpus.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

1    Objections to this Report and Recommendation, if any, should be filed with the Clerk and
2  served upon all parties to this suit by no later than **November 14, 2016**.  Failure to file objections
3  within the specified time may affect your right to appeal.  Objections should be noted for
4  consideration on the District Judge's motion calendar for the third Friday after they are filed.
5  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no
6  timely objections are filed, the matter will be ready for consideration by the District Judge on
7  **November 18, 2016.**

8    This Report and Recommendation is not an appealable order.  Thus, a notice of appeal
9  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the
10 assigned District Judge acts on this Report and Recommendation.

11   DATED this 24th day of October, 2016.

*[Signature: James P. Donohue]*

JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15